**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JULIANA JOLEAN A.,[1]

                               Plaintiff,                    5:20-cv-1268 (BKS)

v.

KILOLO KIJAKAZI, Acting Commissioner of Social
Security,[2]

                               Defendant.

---

**Appearances:**

*For Plaintiff:*
Howard D. Olinsky
Olinsky Law Group
250 South Clinton Street, Suite 210
Syracuse, NY 13202

*For Defendant:*
Carla B. Freedman
United States Attorney
James J. Nagelberg
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
J.F.K. Federal Building, Room 625
Boston, MA 02203

---

[1] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect her privacy.

[2] Pursuant to Fed. R. Civ. P. 25(d), the current Acting Commissioner of Social Security, Kilolo Kijakazi, has been substituted in place of her predecessor, Commissioner Andrew Saul.

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Juliana Jolean A. filed this action under 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Social Security Income ("SSI") Benefits and raising a constitutional challenge to the structure of the Social Security Administration. (Dkt. No. 1). Presently before the Court are Defendant's motion to dismiss Plaintiff's constitutional claim, (Dkt. No. 13), and the parties' briefs filed in accordance with N.D.N.Y. General Order 18, (Dkt. Nos. 22, 25). After carefully reviewing the parties' submissions and the Administrative Record,[3] (Dkt. No. 14), the Court grants Defendant's motion to dismiss and affirms the Commissioner's decision.

## II.    DEFENDANT'S MOTION TO DISMISS

### A.    Background

Plaintiff's complaint alleges:

> Pursuant to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the office of Commissioner of Social Security is unconstitutional, as the President does not have removal power and the Social Security Administration is exempt from budget limitations, placing the agency wholly outside of the President's control. Since the Commissioner's office is unconstitutional, the ALJ's are not constitutionally appointed. Plaintiff is entitled to a new hearing with a constitutionally appointed ALJ.

(Dkt. No. 1, at ¶ 9).

---

[3] The Court cites to the Bates numbering in the Administrative Record, (Dkt. No. 14), as "R." throughout this opinion, rather than to the page numbers assigned by the CM/ECF system.

On May 6, 2021, Defendant moved to dismiss Plaintiff's complaint in part pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 13). Specifically, Defendant moved to dismiss Plaintiff's constitutional claim for lack of Article III standing, arguing that Plaintiff cannot demonstrate that her injury is "fairly traceable" to the alleged constitutionally improper structure of the Administration or that a favorable outcome in this case would redress her injury. (*See generally* Dkt. No. 13-1).[4] Plaintiff opposed Defendant's motion, arguing that she can demonstrate both traceability and redressability. (Dkt. No. 16).

On November 15, 2021, Defendant moved for leave to file a supplemental brief, which the Court accepted for filing. (Dkt. Nos. 23, 24). Defendant's supplemental brief addressed *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and the impact of its holding on Plaintiff's constitutional challenge and Defendant's motion to dismiss. (*See generally* Dkt. No. 23-1). In light of *Collins*, Defendant "no longer presses her threshold standing defense" and instead argues that Plaintiff's constitutional challenge fails because she cannot show that "the Commissioner's statutory tenure protection actually affected the ALJ's decision on her disability benefits claim" and therefore she is not entitled to any relief. (*Id.* at 2–8).[5]

---

[4] Defendant does not move to dismiss the remainder of Plaintiff's "otherwise standard Social Security appeal under 42 U.S.C. § 405(g)." (Dkt. No. 13-1, at 2).

[5] Plaintiff has not had the opportunity to respond to Defendant's supplemental brief, but because Defendant withdraws the threshold standing defense and continues to press the substance of the arguments she asserted in her initial brief, (*compare* Dkt. No. 23-1, at 6–9 (arguing in supplemental brief that Plaintiff cannot "show how the President's supposed inability to remove the Commissioner without cause might possibly have affected . . . the decision on Plaintiff's specific claim"); *with* Dkt. No. 13-1, at 9 (arguing in initial brief that "[t]here is simply no connection between the statutory limitation on removal of the Commissioner and the decision the ALJ rendered on Plaintiff's claims")), the Court may properly consider the arguments in Defendant's supplemental brief. *Cf. Mayer v. Neurological Surgery, P.C.*, No. 15-cv-864, 2016 WL 347329, at *4, 2016 U.S. Dist. LEXIS 10260, at *11 (E.D.N.Y. Jan. 28, 2016) ("The law in this Circuit is clear that arguments raised for the first time in reply briefs need not be considered." (citing *EDP Med. Comp. Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007)).

**B.      Standard of Review**

As an initial matter, the Court must determine which standard of review to apply to Defendant's motion. Although Defendant brought her motion pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Defendant subsequently declined to assert Plaintiff's lack of standing as a defense, instead arguing that, "even if Plaintiff can establish standing, she cannot state a claim upon which relief may be granted." (Dkt. No. 23-1, at 2–3). Defendant further stated: "If required, the Court can properly adjudicate Defendant's 12(b)(1) motion under Rule 12(b)(6) as a motion for failure to state a claim." (*Id.* at 3 n.1 (citations omitted)).

The Court will treat Defendant's motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim. "Generally, courts have discretion to treat a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Henry v. Comm'r of Soc. Sec.*, No. 09-cv-206, 2010 WL 11523750, at *3, 2010 U.S. Dist. LEXIS 151009, at *9–11 (D. Vt. July 6, 2010) (treating Rule 12(b)(1) motion as a Rule 12(b)(6) motion where the "parties have argued extensively on the merits of Henry's claim"); *see also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("In most circumstances, it makes little practical difference whether the district court correctly labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)."); *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."). Here, because the parties have argued the question of whether there is a connection between the alleged constitutional defect and Plaintiff's injury and because the viability of Plaintiff's claim can be decided based on the allegations in the complaint, the Court treats Defendant's motion as one under Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**C.    Analysis**

Plaintiff alleges that "the office of Commissioner of Social Security is unconstitutional" in light of the Supreme Court's holding in *Seila Law* and therefore that the Administration's Administrative Law Judges ("ALJs") "are not constitutionally appointed." (Dkt. No. 1, at ¶ 9). Plaintiff alleges she is "entitled to a new hearing with a constitutionally appointed ALJ." (*Id.*). In light of the Supreme Court's holding in *Collins v. Yellen*, Defendant argues that Plaintiff's constitutional challenge must be dismissed because she cannot show any connection between the alleged improper constitutional structure of the Administration and the decision denying her application for benefits. (*See* Dkt. No. 23-1).

In *Seila Law*, the Supreme Court held that the structure of the Consumer Financial Protection Bureau ("CFBP"), under which the President could remove the CFPB Director only for "inefficiency, neglect of duty, or malfeasance in office," violated the doctrine of separation of powers. *Seila Law*, 140 S. Ct. at 2191–92; *see* 12 U.S.C. § 5491(c)(3) ("The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office."). The Court

reiterated that the President's executive power "generally includes the ability to remove executive officials" and declined to extend precedents recognizing "two exceptions to the President's unrestricted removal power" to the "novel context of an independent agency led by a single Director." *Seila Law*, 140 S. Ct. at 2192, 2197–2207.

In *Collins*, which was decided after Plaintiff responded to Defendant's motion, the Court addressed a similar separation of powers challenge to the structure of the Federal Housing Finance Agency ("FHFA"). *See* 141 S. Ct. at 1770. The FHFA is "an independent agency tasked with regulating [Fannie Mae and Freddie Mac] and, if necessary, stepping in as their conservator or receiver." *Id.* The FHFA had at its head "a single Director, whom the President could remove only 'for cause.'" *Id.* (citing 12 U.S.C. § 4512(a), (b)(2)). Before reaching the merits of the question, the Court held that the plaintiffs, who were shareholders in Fannie Mae and Freddie Mac, had Article III standing, noting that "for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id.* at 1779. On the merits, the Court held that the "for-cause restriction on the President's removal authority violates the separation of powers," noting that the Court's decision in *Seila Law* was "all but dispositive." *Id.* at 1783.

With regard to the plaintiffs' entitlement to relief, the *Collins* Court rejected the argument that officers not removable at will "lacked constitutional authority and that their actions were therefore void." *Id.* at 1787. Although the statute at issue "unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office." *Id.* There was therefore "no reason to regard any of the actions taken by the FHFA" which were at issue as "void." *Id.*[6] However,

---

[6] The Court further cautioned that "[w]hat we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* at 1788 n.24 ("We held

the Court acknowledged that "it is still possible for an unconstitutional provision to inflict compensable harm." *Id.* at 1788–89. The Court remanded for the lower courts to determine in the first instance whether "the unconstitutional removal provision inflicted harm" on the plaintiffs. *Id.* at 1789.

The Social Security Administration is headed by "a Commissioner of Social Security" who is appointed by the President for a six-year term. 42 U.S.C. § 902(a)(1), (3). "An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.* § 902(a)(3). In the wake of *Seila Law* and *Collins*, many district courts have assumed or held that the restriction on the President's power to remove the Commissioner violates the separation of powers. *See, e.g.*, *Kasey V. v. Comm'r of Soc. Sec.*, No. 20-cv-6153, 2022 WL 102048, at *5, 2022 U.S. Dist. LEXIS 5600, at *13 (W.D. Wash. Jan. 11, 2022) ("A straightforward application of *Seila Law* and *Collins* dictates a finding that the removal provision in § 902(a)(3) violates separation of powers."); *Katrina R. v. Comm'r of Soc. Sec.*, No. 21-cv-4276, 2022 WL 190055, at *5, 2022 U.S. Dist. LEXIS 11061, at *13 (S.D. Ohio Jan. 21, 2022) (holding that, "even assuming that § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required"), *report-recommendation adopted by* 2022 WL 456693, 2022 U.S. Dist. LEXIS 26649 (S.D. Ohio Feb. 15, 2022); *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7, 2021 OLC LEXIS 10, at *15 (July 8, 2021) ("We believe that the best reading of [*Seila Law* and *Collins*] compels the conclusion that

---

that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer and that the plaintiff alleges was void. But that holding on standing does not mean that actions taken by such an officer are void *ab initio* and must be undone." (internal citation omitted)).

the statutory restriction on removing the Commissioner is unconstitutional. Therefore, the President may remove the Commissioner at will.").

Here, the Court finds that Plaintiff has not stated a cognizable constitutional claim because, even assuming the Commissioner's statutory tenure protection is unconstitutional, Plaintiff has not alleged facts which would entitle her to a remand for a new hearing or any other relief. Plaintiff's complaint alleges no connection between the removal restriction and the decision denying her application for SSI benefits. (*See* Dkt. No. 1). Plaintiff argues, albeit in the standing context, that her claim is "traceable to the unconstitutional defect" because the ALJs "work under a delegation of authority from the Commissioner" and therefore "flaws in the Commissioner's authority are flaws in the ALJ's authority." (Dkt. No. 16, at 1–2). Plaintiff further argues that "the Commissioner has broad authority over the structure of the Agency and the rules governing the decisions made by the ALJs." (*Id.* at 2). In response, Defendant argues that actions taken by "properly appointed officials" are not automatically rendered void by virtue of a separation of powers violation and that Plaintiff cannot show that the removal restriction inflicted "compensable harm" on her. (Dkt. No. 23-1, at 5–8).[7]

Plaintiff is incorrect that the alleged unconstitutional restriction on the President's ability to remove the Commissioner creates a defect in the Commissioner's authority (and, by extension, that of the ALJs) and renders the ALJs "not constitutionally appointed." Under *Collins*, where the officers in question are "properly *appointed*," "there is no reason to regard any of [their] actions" as "void." *Collins*, 141 S. Ct. at 1787; *see id.* at 1788 n.23 ("[T]he

---

[7] The Court does not address the parties' arguments regarding whether any causal connection between the removal restriction and the denial of Plaintiff's claim is severed because the ALJ who heard Plaintiff's case was appointed by an *Acting* Commissioner who was removable at will. (*See* Dkt. No. 16, at 4–5; Dkt. No. 23-1, at 3–4). The facts underlying these arguments are not alleged in Plaintiff's complaint, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."), and resolution of the question is unnecessary to the Court's decision.

unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office."). In short, "under *Collins*, actions taken by properly appointed officials are not void." *Satterthwaite v. Kijakazi*, No. 20-cv-724, 2022 WL 468946, at *5, 2022 U.S. Dist. LEXIS 27204, at *14–15 (W.D.N.C. Feb. 15, 2022). Here, Plaintiff likewise alleges "no constitutional defect in the statutorily prescribed method of appointment" of the Commissioner or the ALJ; nor does she raise an Appointments Clause challenge. *Cf. Collins*, 141 S. Ct. at 1787; *see also Satterthwaite*, 2022 WL 468946, at *5, 2022 U.S. Dist. LEXIS 27204, at *14 ("[U]nlike Appointments Clause defects, where the presiding official does not enjoy proper authority to occupy the office, agency action is not per se invalid simply because it can be traced back to an official subject to an unconstitutional removal protection." (internal citation omitted)).

Furthermore, Plaintiff has not alleged any connection between the removal restriction and the unfavorable decision denying her claim for benefits. She therefore has not alleged that the unconstitutional removal restriction itself inflicted "compensable harm." *Cf. Collins*, 141 S. Ct. at 1789. Courts considering similar challenges have uniformly rejected requests for remand. *Katrina R.*, 2022 WL 190055, at *5, 2022 U.S. Dist. LEXIS 11061, at *14–15 ("Indeed, courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand.") (collecting cases); *White v. Comm'r of Soc. Sec.*, No. 20-cv-1695, 2022 WL 463318, at *7, 2022 U.S. Dist. LEXIS 27538, at *24 (E.D. Cal. Feb. 15, 2022) (finding plaintiff was "not entitled to remand for a new hearing" where she "does not demonstrate any connection between her denial of benefits and the unconstitutional removal provision"); *Satterthwaite*, 2022 WL 468946, at *6, 2022 U.S. Dist. LEXIS 27204, at *16 (holding that the plaintiff "cannot conceivably show how the President's supposed inability to

remove the Commissioner without cause might possibly have affected any ALJ's disability benefits decision, much less the decision on Plaintiff's specific claim"); *Lisa Y. v. Comm'r of Soc. Sec.*, --- F. Supp. 3d. ---, No. 21-cv-5207, 2021 WL 5177363, at *7–8, 2021 U.S. Dist. LEXIS 215767, at *22–23 (W.D. Wash. Nov. 8, 2021) (concluding there was "no possibility" that Section 902(a)(3) harmed the plaintiff because the ALJ's decision was "based upon an uncontested factual record and the application of governing law, including unchallenged regulations"); *see also Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.").

In sum, because Plaintiff has not plausibly alleged any connection between the denial of her claim and the alleged unconstitutional statutory tenure protection afforded to the Commissioner, the Court grants Defendant's motion to dismiss her constitutional claim.

## III.     REVIEW OF THE COMMISSIONER'S DECISION UNDER 42 U.S.C. § 405(g)

### A.     Background

#### 1.     Procedural History

Plaintiff applied for SSI benefits on October 10, 2017, alleging disability due to a variety of physical impairments and major depressive disorder with an alleged onset of February 12, 2017. (R. 199–202, 224). Plaintiff's claim was denied initially on January 16, 2018. (R. 96). Plaintiff appealed that determination, and hearings were held before ALJ David Romeo on October 8, 2019, at which Plaintiff was represented by non-attorney representative Nicole Watts. (R. 52–85). On October 17, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17–37). Plaintiff filed a request for review of that decision with the Appeals Council on November 13, 2019. (R. 196–98). The Appeals Council denied review on August 18, 2020. (R. 1–7). Plaintiff commenced this action on October 12, 2020. (Dkt. No. 1).

### 2.    Plaintiff's Background and Testimony[8]

Plaintiff was 33 years old at the time of the October 8, 2019 hearing, and she lived with her boyfriend and his 14-year-old son. (R. 56–57). Plaintiff completed high school and one semester of college. (R. 58). She has previously worked as a daycare worker and a breakfast host. (*Id.*). Plaintiff testified that she was unable to work because of bilateral dysplasia, two herniated discs, spinal stenosis, and pain and weakness in her right leg. (R. 60–61). Plaintiff takes gabapentin and Flexeril for pain management. (R. 63). Plaintiff testified that she could stand for 25 to 40 minutes, walk for 15 to 20 minutes, and sit for 15 to 20 minutes. (R. 62, 68). Plaintiff testified that, after a fall which resulted in a concussion and possible traumatic brain injury, she has "had a pretty bad memory" and requires notes to remind her of what she needs to do. (R. 69–70). When asked if she was having any side effects from the medication she takes, Plaintiff responded: "All my medications, like I don't know which ones are causing what." (R. 74–75). She mentioned experiencing nausea as a result of Suboxone and feeling "fatigued all the time." (R. 75).

### 3.    Medical Evidence

As set forth in the ALJ's decision, Plaintiff suffers from a number of physical and mental impairments, including undergoing a right hip arthroscopic labrum repair, lumbar degenerative disc disease, degenerative joint disease, morbid obesity, post-traumatic stress disorder ("PTSD"), major depressive disorder, hypothyroidism, asthma, anxiety disorder, headaches, and bilateral carpal tunnel syndrome. (*See* R. 19). Although much of the record evidence predates Plaintiff's alleged onset date, Plaintiff continued to suffer from these impairments.

---

[8] The Court summarizes only the record evidence which is relevant to Plaintiff's arguments or necessary for context. Additionally, the Court focuses primarily on record evidence from after Plaintiff's alleged onset date.

For example, on March 24, 2017, Plaintiff reported to the emergency department at Cortland Regional Medical Center after being assaulted by a friend, complaining of a diffuse headache, nausea, and sharp pain in her neck. (R. 346). The provider noted that Plaintiff has a "history of chronic neck and low back pain" as well as a "concussion with chronic headaches as a result." (*Id.*). Plaintiff was "alert, interactive and cooperative with the exam." (R. 347).

Plaintiff was seen at Upstate University Hospital on March 6, 2017 for an initial evaluation after falling twice. (R. 597). Since the falls, Plaintiff had experienced headaches, nausea, dizziness, fatigue, and visual changes. (*Id.*). Plaintiff was alert, oriented, and cooperative, and her mood and affect were within normal limits. (R. 600). Her judgment was intact. (*Id.*). Plaintiff was agreeable to increasing her dosage of gabapentin to help with her headaches and sleep issues. (R. 601). At a follow up in September 2017, Plaintiff reported that the gabapentin had "improved her headaches" and planned on discussing with her primary care provider a possible increase in dose "as she is tolerating" the current dose. (R. 602).

On March 30, 2017, Plaintiff followed up with the New York Spine & Wellness Center after receiving a bilateral lumbar nerve block injection which provided no pain relief. (R. 399–400). The Center noted that Plaintiff's symptoms began in approximately 2007 and that there were "no known medication side effects." (R. 400). Plaintiff was scheduled to meet with other doctors to discuss her right hip and low back surgical options. (*Id.*). Plaintiff did "not feel that her pain [was] adequately controlled" and requested "pain pills." (*Id.*). Plaintiff was alert and oriented, and she displayed pleasant and appropriate mood and affect, intact judgment, and normal insight. (R. 403).

On March 6, 2017, Plaintiff followed up at Syracuse Orthopedic Specialists for her right hip after having an arthroscopy. (R. 417). Plaintiff reported that her hip was "doing okay" and

was "tolerable." (*Id.*). Plaintiff noted she had many other medical issues going on, including issues with her back and thyroid. (*Id.*). Plaintiff was seen again on June 12, 2017, to follow up after receiving a lumbar injection which had "minimal effect." (R. 412). Plaintiff returned to Syracuse Orthopedic Specialists in January 2018 and July 2019 complaining of low back pain. (R. 922, 927). An MRI was ordered at the January 2018 visit, and in July 2019 Plaintiff decided to proceed with physical therapy. (R. 926, 931).

In March through June 2017, Plaintiff saw Manoj Kumar, M.D. at CNY Medical Professionals for placement of a ventilation tube in her ear and symptoms related to dizziness, difficulty swallowing, body masses, hypothyroidism, reflux disease. (R. 538–51; *see also generally* R. 837–85).

### a.      Regional Medical Practice, P.C.

Plaintiff has seen Jenniferleigh Clune, FNP, her primary care provider, on a regular basis. On February 16, 2017, for example, Plaintiff presented to Nurse Practitioner Clune with a headache after suffering a few falls. (R. 663). Plaintiff was alert and oriented and had appropriate behavior. (R. 664). In April, Nurse Practitioner Clune noted that Plaintiff was taking gabapentin, among other medications, and that she had neck injections in March that did not help. (R. 666). Plaintiff again was alert and oriented and had appropriate behavior, (R. 667), a finding which Nurse Practitioner Clune repeatedly noted, (*e.g.*, R. 670–71, 673, 676, 1039, 1047, 1051, 1061, 1070, 1073, 1079, 1089).

In July 2017, Plaintiff complained of low back pain which was constant and numbness down her right leg. (R. 669). Plaintiff also complained of problems sleeping through the night due to pain in her left side. (*Id.*). In August, Plaintiff presented with bilateral wrist pain. (R. 672).

#### b.      Mental Health Treatment

Plaintiff saw Joanne Bigness, NPP, Sarah Chambers, NPP, and Jackie Yaman, LCSW, at the Cortland County Mental Health Clinic for treatment of her anxiety, depression, and post-traumatic stress disorder. In these visits, Plaintiff reported symptoms of depression and anxiety, as well as "multiple personal, relationship, family, [and] medical concerns." (*E.g.*, R. 689). Plaintiff regularly denied any side effects from her prescribed medications. (*E.g.*, R. 685, 687, 689, 733, 742, 746, 750, 783, 787, 798). These providers also regularly found that Plaintiff displayed a cooperative and appropriate attitude that her affect was appropriate to mood. (*E.g.*, R. 685–88, 690, 734, 743, 747, 751, 760, 764, 768, 772, 776, 784, 788, 795, 799). Plaintiff's memory, attention span and concentration, judgment, insight, and impulse control were all regularly "grossly intact." (*Id.*).

### 4.      Opinion Evidence

#### a.      Nurse Practitioner Clune and Dr. Johnson (Treating Providers)

On September 17, 2019, Nurse Practitioner Clune completed a "Medical Source Statement," which Janet Johnson, M.D. endorsed as a supervising physician. (R. 932–34).[9] The providers noted that Plaintiff was currently taking gabapentin, among other pain medications, and that gabapentin "can cause sedation." (R. 932). The providers opined that Plaintiff could sit for more than two hours at one time and stand for 45 minutes. (*Id.*). Further, they opined that Plaintiff could stand/walk about two hours total in an eight-hour workday and sit for at least six hours. (R. 933). The providers opined that Plaintiff would need a job that permitted her to shift positions at will. (*Id.*).

---

[9] Nurse Practitioner Clune also completed a Medical Assessment on June 12, 2019, which contains similar opined limitations as the September 2019 statement. (*See* R. 1118–22; R. 33 (the ALJ finding this statement to have "some persuasive value")). Plaintiff principally focuses on the September 17, 2019 opinion.

Most relevant to Plaintiff's appeal, Nurse Practitioner Clune and Dr. Johnson opined that Plaintiff would need to take an unscheduled break approximately once each workday for an average of 15 minutes. (R. 934). They further opined that Plaintiff would be "off task (i.e. unable to maintain attention or perform at a consistent pace)" 20% of an eight-hour workday and that she likely would be absent from work more than four days per month. (*Id.*).

### b.      Dr. Jeanne Shapiro (Consultative Examiner)

Psychiatric examiner Jeanne A. Shapiro, Ph.D., evaluated Plaintiff on November 3, 2017. (R. 706–10). Dr. Shapiro found that Plaintiff's "demeanor and responsiveness to questions" were cooperative and that her "manner of relating, social skills, and overall presentation" were adequate. (R. 708). Dr. Shapiro noted that Plaintiff's thought processes were "coherent and goal directed" and that her affect was "congruent" with her thoughts and speech. (*Id.*). Plaintiff reported during the examination that she felt "stable," and she appeared "relaxed and comfortable." (*Id.*). Dr. Shapiro found that Plaintiff's "attention and concentration" and "recent and remote memory skills" were intact, and she estimated Plaintiff's intellectual functioning to be in the average range. (R. 709).

Dr. Shapiro opined that Plaintiff had "no limitations understanding, remembering, or applying simple directions and instructions" but "mild limitations" with respect to complex instructions. (*Id.*). Further, Plaintiff had "no limitations using reasoning and judgment to make work-related decisions" but "moderate limitations interacting adequately with supervisors, coworkers, and the public." (*Id.*). Dr. Shapiro opined that Plaintiff had "mild-moderate limitations sustaining concentration and performing a task at a consistent pace" but "no limitations sustaining an ordinary routine and regular attendance at work." (*Id.*). Plaintiff appeared to have "moderate limitations regulating emotions, controlling behavior, and maintaining well-being." (*Id.*).

5.       **The ALJ's Decision Denying Benefits**

The ALJ issued a decision on October 17, 2019 and, using the required five-step evaluation process to reach his conclusion,[10] determined that Plaintiff was not disabled under the Social Security Act. (R. 17–37). At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since October 10, 2017, Plaintiff's application date. (R. 19). At step two, the ALJ determined that Plaintiff had the following severe impairments under 20 C.F.R. § 416.920(c): "status-post right hip arthroscopic labrum repair and osteoarthritis, lumbar degenerative disc disease and degenerative joint disease, morbid obesity, post-traumatic stress disorder, bipolar disorder, borderline personality disorder, major depressive disorder, hyp[o]thyroidism, asthma, status-post traumatic brain injury, anxiety disorder, post-traumatic headaches, bilateral carpal tunnel syndrome, and cervical spine degenerative changes." (R. 19–20). The ALJ further determined that Plaintiff had "failed to satisfy her burden of establishing any other impairments as 'severe,'" including her "opioid dependence in remission, suboxone therapy, daily cannabis use, or any other alleged condition." (R. 20).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 20 (citing 20 C.F.R. §§ 416.920(d), 416.925,

---

[10] Under the five-step analysis for evaluating disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a severe impairment, (3) that the impairment is not one listed in Appendix 1 of the regulations that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)) (internal quotation marks and punctuation omitted). "The claimant bears the burden of proving his or her case at steps one through four," while the Commissioner bears the burden at the final step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

416.926)).[11] When considering Plaintiff's mental impairments in this context, the ALJ

determined that Plaintiff had a mild limitation in understanding, remembering, or applying

information; a moderate limitation in interacting with others; a mild limitation in concentrating,

persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. (R.

20–22).

The ALJ proceeded to determine Plaintiff's residual functional capacity ("RFC")[12] and

found that Plaintiff had the RFC "to work at the sedentary exertional level" as defined in 20

C.F.R. § 416.967(a) with the following, additional limitations:

> occasional operation of foot controls with the right lower extremity;
> occasionally balance, stoop, kneel, crouch, crawl, and climb ramps
> and stairs; never climb ropes, ladders, or scaffolds; frequently reach,
> handle, finger, and feel with both upper extremities; never be
> exposed to high, exposed places or moving mechanical parts;
> occasional exposure to weather, extreme heat, extreme cold,
> wetness, humidity, vibration, and atmospheric conditions; can
> tolerate a moderate noise intensity level as defined in the DOT/SCO;
> can tolerate occasional exposure to light brighter than that typically
> found in an indoor work environment, such as an office or retail
> store; can understand, remember, and carry out simple instructions
> and make simple work-related decisions; can work at a consistent
> pace throughout the workday, but not at a production-rate pace
> where each task must be completed within a strict time deadline; can
> tolerate occasional interaction with co-workers, supervisors, and the
> public; can tolerate occasional changes in the work setting; can
> tolerate a low level of work pressure, defined as work not requiring
> multitasking, very detailed job tasks, significant independent
> judgment, very short deadlines, or teamwork in completing job
> tasks; and would need an option to stand for five minutes after every
> 30 minutes of sitting, but can remain on-task while standing.

---

[11] Plaintiff does not challenge the ALJ's findings through step three.

[12] The regulations define residual functional capacity as "the most [a claimant] can still do despite" her limitations. 20 C.F.R. § 416.945(a)(1).

(R. 23). In making this determination, as relevant to Plaintiff's appeal, the ALJ considered the medical opinions in the record from Nurse Practitioner Clune and Dr. Johnson and Dr. Shapiro. (R. 32–33).

The ALJ first determined that the September 17, 2019 opinion prepared by Nurse Practitioner Clune and Dr. Johnson had "some persuasive value." (R. 32). The ALJ found "support" for the opinion "to the extent" the providers opined regarding Plaintiff's ability to sit, stand, walk, lift, and carry; Plaintiff's need to shift positions at will; and many of her postural limitations. (*Id.*). However, the ALJ found "the rest of" the opinion "to be an underestimation of the claimant's physical ability to perform work-related activities, and thus unpersuasive." (*Id.*). This included the opinion that Plaintiff would need to take an unscheduled break once a day for 15 minutes, would be off-task for 20 percent of an eight-hour workday, and would be absent for more than four days per month. (*Id.*). The ALJ noted: "Nearly all of the exams of the claimant by Dr. Johnson and Nurse Practitioner Clune have been essentially within normal limits during the period at issue." (*Id.*). Accordingly, the ALJ found that the opinion that Plaintiff would need to take an unscheduled break "appear[ed] to be based solely on the claimant's subjective report, rather than on any objective findings." (*Id.*). Further, their absenteeism opinion "is also purely speculative and not based on any documented observation or evaluation." (*Id.*). Finally, the ALJ noted that "there is no indication that any testing of the claimant's attention and concentration was ever performed by Dr. Johnson and Nurse Practitioner Clune to support their conclusion that claimant would be off-task for 20 percent of the time." (R. 32–33).

The ALJ also found that Dr. Shapiro's September 22, 2017 opinion had "some persuasive value." (R. 33). The ALJ noted that Dr. Shapiro's opinion was "based upon a direct examination" of Plaintiff and was "supported by the findings that Dr. Shapiro made and included

in her report." (*Id.*). The ALJ also found that Dr. Shapiro's opinion had some persuasive value because Dr. Shapiro has "familiarity with the policies and evidentiary requirements" of the Administration's disability program and the "purpose" of the examination was "to render a medical opinion on disability." (*Id.*).

At step four, having determined Plaintiff's RFC and relying on the testimony of the vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. 34).

At step five, again relying on the VE's testimony, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 34). These occupations included addresser (*Dictionary of Occupational Titles* ("*DOT*") Code 209.587-010), document preparer—microfilming (*DOT* Code 249.587-018), and cutter and paster—press clippings (*DOT* Code 249.587-014). (R. 35–37). Accordingly, the ALJ found Plaintiff "not disabled." (R. 37).

### B.    Discussion

#### 1.    Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence is 'more than a mere scintilla.' It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (per curiam) (quoting *Moran*, 569 F.3d at 112). The substantial evidence standard is "very

deferential," and the Court may reject the facts that the ALJ found "only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The Court, however, must also determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). The Court reviews de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See id.*; *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

2.      Analysis

Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate the opinions of Nurse Practitioner Clune and Dr. Johnson and (2) relying on the VE's testimony without resolving an inconsistency between the ALJ's RFC determination and the ability to perform the job of document preparer—microfilming. (Dkt. No. 22, at 11–16).

a.      **Weighing of Nurse Practitioner Clune and Dr. Johnson's Opinions**

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate the portions of Nurse Practitioner Clune and Dr. Johnson's opinions regarding off-task time and absenteeism. (Dkt. No. 22, at 11–14). Defendant responds that the ALJ adequately explained how he considered the supportability and consistency factors when evaluating the persuasiveness of the opinion. (Dkt. No. 25, at 7–11).

In accordance with regulations which apply to claims filed on or after March 27, 2017, the Commissioner must consider medical opinions and "evaluate the[ir] persuasiveness" based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 416.920c(a)–(c). The ALJ is required to "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." *Id*. at § 416.920c(a), (b). The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. *Id*. at § 416.920c(b)(2).

Here, the ALJ found that the Nurse Practitioner Clune and Dr. Johnson's September 17, 2019 opinion had "some persuasive value." (R. 32). The ALJ found that many of the limitations opined by the providers, including Plaintiff's ability to sit, stand/walk, and lift/carry, had "support" and were therefore persuasive. (*Id.*). However, the ALJ determined that certain portions of the opinion, including the opinion that Plaintiff "would be off-task for 20 percent of an eight-hour workday" and "absent from work for more than four days per month," were "an underestimation of the claimant's physical ability to perform work-related activities, and thus unpersuasive." (*Id.*). The ALJ noted that "[n]early all of the exams of the claimant by Dr. Johnson and Nurse Practitioner Clune have been essentially within normal limits during the period at issue" and that their opinion that Plaintiff would need to take an unscheduled break "appears to be based solely on the claimant's subjective report, rather than on any objective findings." (*Id.*). The ALJ further stated that the providers' "estimation" that Plaintiff would be absent from work for more than four days per month was "purely speculative and not based on any documented observation or evaluation." (*Id.*). Finally, the ALJ noted that "there is no

indication that any testing of the claimant's attention and concentration was ever performed by Dr. Johnson and Nurse Practitioner Clune to support their conclusion that the claimant would be off-task for 20 percent of the time during an eight-hour workday." (R. 32–33).

The Court finds that the ALJ sufficiently explained his consideration of the supportability and consistency factors with regard to Nurse Practitioner Clune and Dr. Johnson's opined off-task and absenteeism limitations and why he found this portion of their opinion to be "unpersuasive." Contrary to Plaintiff's argument, the ALJ gave more than a "perfunctory, conclusory rejection of the evidence concerning an applicant's need for time off-task." (*See* Dkt. No. 22, at 13 (quoting *Lopez v. Kijakazi*, No. 20-cv-2263, 2021 WL 4463288, at *3, 2021 U.S. Dist. LEXIS 187351, at *7 (E.D.N.Y. Sept. 29, 2021))). Although the ALJ stated that the absenteeism opinion was "purely speculative and not based on any documented observation or evaluation," he gave additional reasons for finding the opinion unpersuasive, including exams "essentially within normal limits," an apparent reliance on Plaintiff's subjective reports, and the lack of testing of Plaintiff's attention and concentration. (R. 32–33). This case is therefore distinguishable from the cases on which Plaintiff relies. *See Lopez*, 2021 WL 4463288, at *3, 2021 U.S. Dist. LEXIS 187351, at *7–8 (finding that the ALJ's perfunctory and conclusory rejection of the evidence regarding the plaintiff's need to be off-task insufficient where the ALJ's decision was "silent" on the issue); *Drake v. Saul*, 839 F. App'x 584, 586–87 (2d Cir. 2020) (summary order) (finding the ALJ's "cursory statement" that a provider's opinion regarding off-task time was "not supported by the evidence" to be "inadequate" where the ALJ gave no "further explanation").

The ALJ adequately explained that Nurse Practitioner Clune and Dr. Johnson's opinion was unpersuasive because of the lack of any testing of Plaintiff's attention and concentration. (R.

32–33). The existence or lack of formal testing is a valid consideration when determining

whether a provider's opinion is properly supported. *Cf. Samantha B. v. Kijakazi*, No. 20-cv-590,

2021 WL 4288442, at *12, 2021 U.S. Dist. LEXIS 179430, at *35–36 (N.D.N.Y. Sept. 21, 2021)

(finding that the ALJ's conclusion that the provider's opinion regarding off-task time was "not

supported by the medical evidence" was supported by substantial evidence where the provider's

opinion was "not supported by formal testing of Plaintiff's attention or concentration"); *see also

Renalda R. v. Comm'r of Soc. Sec.*, No. 20-cv-915, 2021 WL 4458821, at *11 n.4, 2021 U.S.

Dist. LEXIS 186423, at *30 n.4 (N.D.N.Y. Sept. 29, 2021) ("[I]t was appropriate for the ALJ to

consider that neither [provider] conducted any testing that would shed light on Plaintiff's ability

to concentrate."). Furthermore, the ALJ found that the opinion was not supported because

"[n]early all of the exams of the claimant by Dr. Johnson and Nurse Practitioner Clune have been

essentially within normal limits during the period at issue." (R. 32 (citing R. 610–81, 1037–

1127)). Indeed, Nurse Practitioner Clune regularly described Plaintiff as alert and oriented and

with appropriate behavior. (R. 664, 667, 670–71, 673, 676, 1039, 1047, 1051, 1061, 1070, 1073,

1079, 1089).

Plaintiff argues that Nurse Practitioner Clune and Dr. Johnson supported their opinion

regarding off-task time and absenteeism by explaining that gabapentin, one of Plaintiff's pain

medications, can cause sedation. (Dkt. No. 22, at 13 (citing R. 932)); *see* 20 C.F.R.

§ 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting

explanations presented by a medical source to support his or her medical opinion(s) . . . the more

persuasive the medical opinions . . . will be.").[13] However, the providers did not state that

---

[13] Nurse Practitioner Clune similarly stated in her June 12, 2019 medical assessment that gabapentin "can cause sedation." (R. 1119).

Plaintiff actually experiences this side effect or present other objective medical evidence regarding Plaintiff's need to be off-task or absent from work. *Cf. Tamara M. v. Saul*, No. 19-cv-1138, 2021 WL 1198359, at *9, 2021 U.S. Dist. LEXIS 60514, at *27 (N.D.N.Y. Mar. 30, 2021) (finding that the doctor's mental assessment regarding off-task time and absenteeism did not have "specific clinical findings to support" the marked limitations, even where the provider noted the plaintiff's diagnoses and "provided that plaintiff's medications cause fatigue and somnolence"). Indeed, there is no suggestion in the record that Plaintiff ever experienced sedation as a side effect of taking gabapentin. (*See, e.g.*, R. 602 (September 26, 2017 treatment note indicating that Plaintiff "has been taking gabapentin" as directed and "is tolerating it"), 685 (October 12, 2017 treatment note recording that Plaintiff "reports adherence to meds as prescribed without [side effects]"), 1050 (February 12, 2018 treatment note reporting that Plaintiff's "gabapentin dose was increased" and she did not have any side effects), 1060 (March 12, 2018 treatment note reporting no side effects from gabapentin), 746 (March 25, 2019 treatment note reading: "Taking medication as prescribed. No side effects noted.")).

Finally, Plaintiff argues that Nurse Practitioner Clune and Dr. Johnson's opinion regarding off-task time and absenteeism are consistent with Dr. Shapiro's opinion that Plaintiff had mild-moderate limitations in sustaining concentration and performing a task at a consistent pace. (Dkt. No. 22, at 14; *see* R. 709). However, Dr. Shapiro opined that Plaintiff had "no limitations sustaining an ordinary routine and regular attendance at work," and she noted during her evaluation that Plaintiff's attention and concentration were "intact." (R. 709).[14] Nurse Practitioner Clune and Dr. Johnson's opinion regarding off-task time and absenteeism therefore

---

[14] Dr. Shapiro's opined limitations were accounted for in the ALJ's RFC determination, which limited Plaintiff to "simple instructions," making "simple work-related decisions," and working at a "consistent pace throughout the workday, but not at a production-rate pace." (R. 23).

exceeds the limitations opined by Dr. Shapiro, which the ALJ found had "some persuasive value." (R. 33); *see Tamara M.*, 2021 WL 1198359, at *8, 2021 U.S. Dist. LEXIS 60514, at *25 ("Although plaintiff correctly notes that most opinions of record indicated that plaintiff would have some limitations with staying off-task and attendance, . . . Dr. Hsue is the only acceptable medical source to conclude that these limitations were above a moderate degree of restriction.").

In sum, the Court finds that substantial evidence supports the ALJ's evaluation of Nurse Practitioner Clune and Dr. Johnson's opinion regarding Plaintiff's limitations in off-task time and absenteeism.

**b.       Reliance on the Vocational Expert's Testimony**

Plaintiff also argues that the ALJ failed to resolve an inconsistency between the RFC determination limiting her to "simple instructions" and the testimony of the VE that a hypothetical person with Plaintiff's RFC could perform the job of document preparer—microfilming, which requires a reasoning level of three (as defined by the *DOT*). (Dkt. No. 22, at 14–16). Defendant responds that there is no inconsistency between a limitation to simple instructions and a reasoning level of three. (Dkt. No. 25, at 11–14).

The Second Circuit has made clear that an ALJ has an "affirmative obligation" to identify and resolve "apparent conflicts" between the *DOT* and VE testimony. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93–94 (2d. Cir. 2019) (citing, *inter alia*, SSR 00-4p, 2000 WL 1898704, at *1, 2000 SSR LEXIS 8, at *1 (Dec. 4, 2000) ("[O]ur adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles.")). An ALJ may not satisfy this obligation by asking the VE the "catch-all" question of whether his testimony is consistent with the *DOT*. *See id.* However, an ALJ's "failure to follow SSR 00-4p where there is no conflict between the expert's opinion and the DOT" is harmless error. *Edwards v. Astrue*, No. 07-cv-898,

2010 WL 3701776, at *14, 2010 U.S. Dist. LEXIS 96830, at *45 (N.D.N.Y. Sept. 16, 2010)

(citing *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.9 (9th Cir. 2007)).

Here, the Court finds there was no apparent conflict between the VE's testimony and the *DOT* for the ALJ to identify and resolve. The job of document preparer requires a reasoning level of three. *See DOT*, Document Preparer, Microfilming, Code 249.587-018, 1991 WL 672349.[15] The *DOT* defines a reasoning level of three to require the following: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *DOT*, Appendix C—Components of the Definition Trailer, 1991 WL 688702.[16]

Plaintiff argues that a discrepancy exists between the VE's testimony and the *DOT* because the requirements of reasoning level three are inconsistent with the RFC determination limiting her to carrying out "simple instructions" and that the ALJ therefore erred by not "clarify[ing] through questioning of the VE if a restriction to simple instructions would comply with a reasoning level of three." (Dkt. No. 22, at 15). However, district courts in this Circuit have found that a limitation to carrying out simple instructions is not necessarily inconsistent with a reasoning level of three. *See Jones Reid v. Astrue*, 934 F. Supp. 2d 381, 408–09 (D. Conn. 2012) (holding that the "hypothetical limitation of only short, simple instructions" is not inconsistent with jobs requiring a reasoning level of two or three), *aff'd*, 515 F. App'x 32 (2d Cir. 2013); *Lofton v. Colvin*, No. 13-cv-528, 2015 WL 2367692, at *27, 2014 U.S. Dist. LEXIS 183854, at *69–70 (D. Conn. Oct. 24, 2014) ("[A] restriction of simple tasks or instructions is consistent

---

[15] No Lexis cite is available for *DOT* entries.

[16] Plaintiff does not argue that there is an inconsistency between a limitation to simple instructions and the other two jobs identified by the VE, which require a reasoning level of two. Plaintiff argues, however, that without the document preparer job, the remaining jobs identified by the VE do not constitute work that exists in significant numbers in the national economy. (Dkt. No. 22, at 15–16).

with both Reasoning Level Two and Three positions."), *report-recommendation adopted by* 2015 WL 2367692, 2015 U.S. Dist. LEXIS 62747 (D. Conn. May 13, 2015); *Quiles v. Colvin*, No. 13-cv-1905, 2015 WL 13729877, at \*15, 2015 U.S. Dist. LEXIS 176071, at \*43–44 (D. Conn. Jan. 28, 2015) (holding that a limitation to work "with simple instructions is consistent with jobs in reasoning levels 1, 2, and 3"), *report-recommendation adopted by* 2016 WL 543102, 2016 U.S. Dist. LEXIS 15934 (D. Conn. Feb. 10, 2016); *see also Race v. Comm'r of Soc. Sec.*, No. 14-cv-1357, 2016 WL 3511779, at \*7, 2016 U.S. Dist. LEXIS 80855, at \*20–21 (N.D.N.Y. May 24, 2016) (noting courts have found that jobs with reasoning levels of three "are compatible with limitations to simple and low stress work" and collecting cases), *report-recommendation adopted by* 2016 WL 3512217, 2016 U.S. Dist. LEXIS 80854 (N.D.N.Y. June 22, 2016); *Haiss v. Berryhill*, No. 17-cv-8083, 2019 WL 3738624, at \*11, 2019 U.S. Dist. LEXIS 83158, at \*36–37 (S.D.N.Y. May 15, 2019) (noting that "a growing number of courts have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple, routine work" and collecting cases).

Accordingly, the Court finds there was no conflict between Plaintiff's RFC determination limiting her to "simple instructions" and the VE's testimony that she could perform a job with a reasoning level of three and that substantial evidence supports the ALJ's finding at step five.

## IV.   CONCLUSION

For these reasons, it is hereby,

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's constitutional claim is **DISMISSED**; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: <u>February 28, 2022</u>
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge